# SUPREME JUDICIAL COURT

FOR THE

COUNTIES OF PLYMOUTH, BARNSTABLE, BRISTOL
AND DUKES-COUNTY, OCTOBER TERM 1835,
AT PLYMOUTH.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

## Simeon Williams *versus* The Inhabitants of Raynham.

The statute of 1731, setting off the northeasterly part of Taunton and incorporating it under the name of Raynham, describes a large portion of the southwestern boundary of Raynham as a straight line leading from the river to a hill, " excluding the land of W, joining to and on the east side of said line, which is to pay his proportion of public charges to the town of Taunton." It was *held*, that this was a permanent annexation of the land of W to Taunton, and not a mere personal privilege which would cease at his death.

By the act of 1734, incorporating the town of Halifax, a pretty direct line was drawn across Plympton as the boundary between the two towns, but it was " to be understood, that the land of Z. S., and his family, dwelling within the bounds of Halifax, should still be and remain to the town of Plympton." This land was owned and occupied by Z. S., and by his son after him, until a short time before 1817, when the son died, and the land was purchased and thenceforward occupied by the plaintiff. The owners had always been taxed in Plympton until 1821, when Halifax assessed a tax upon the plaintiff; and the son of Z. S., and the plaintiff, had several times been chosen and had served as town officers in Plympton, and the land fell within that town according to maps of the towns made by their respective agents about the year 1794. It was *held*, that by contemporaneous construction, and probably by the words of the act of 1734, the plaintiff and his land belonged to Plympton. *See note.*

ASSUMPSIT to recover back the sum of $4·01 assessed by the town of Raynham, upon the plaintiff, as a tax upon his poll and estate, for the year 1833.

Williams
v.
Raynham.

In the Court of Common Pleas the parties stated a case.

The suit was prosecuted by the town of Taunton, in the name of the plaintiff.

In 1731 an act was passed by the legislature, providing, that the northeasterly part of Taunton, as therein bounded and described, should be set off and erected into a separate town by the name of Raynham. The act then proceeds to describe the bounds of the new town, "on the south by Taunton great river, including all the land of Lieutenant Ebenezer Robinson on the southeasterly side of said river, &c. thence down said river to the bounds between the lands of Thomas Dean and Nathaniel Williams, at the place called Shallow Water, thence on a straight line to the east end of Prospect Hill, at the going over of the way, including within said new township all the land of Zephaniah Leonard, and that which was formerly Captain James Leonard's, which joineth to and is on the west side of said line, which is to pay his proportion of all public charges to said new township, and excluding the land of Nathaniel Williams, joining to and on the east side of said line, which is to pay his proportion of public charges to the town of Taunton," &c.

Soon after the passage of the act, committees were chosen by the two towns respectively, for the purpose of laying out the new town. The committee chosen on the part of Raynham, consisted of Ebenezer Robinson and Zephaniah Leonard.

The report of these committees included in Raynham the land of Robinson on the southeasterly or south side of the river, describing it by the monuments which they had set up thereon, and then proceeded as follows : "thence down said river to the bounds between the land of Thomas Dean and Nathaniel Williams, at a place called Shallow Water ; thence north twenty-three degrees west, to a post set up on the hill, and between the two paths by Nathaniel Dean's, marked, &c.; from thence on the same course, by marked trees, to the east end of Prospect Hill, at a stake," &c. The committees fur-

ther declare in their report, that they have run the bounds with " a due regard to the inclusions and exclusions expressed in the act, respecting the land of Zephaniah Leonard, which was formerly Captain James Leonard's, as also the 'ands of Nathaniel Williams."

The straight line described in the act, between Shallow Water and Prospect Hill, passed directly through one corner of the dwellinghouse of Nathaniel Williams, leaving about one third of it on the east side of the line. There was no monument standing on this line except a few ancient marked trees on or near the land of Zephaniah Leonard.

Nathaniel Williams, who was the ancestor of the plaintiff, was uniformly taxed for his lands and poll in Taunton. After his death, his son, grandson and great-grandson (the plaintiff) lived successively on the land which belonged to him in 1731, and they and all other persons who have lived on the same land, have been taxed for their polls and estates in Taunton, and have always exercised the rights and privileges of citizens of that town ; and they had never been taxed by Raynham for the abovementioned real estate, or for their polls or personal property, until the year 1833. The northerly lot of land referred to in the act as the land of Zephaniah Leonard, was woodland, of very little value, and had never been taxed in Taunton.

It further appeared, that the road leading to Bridgewater through the Williams land had been supported by Raynham, up to the straight line ; and that another road through the same land had been supported for the last twenty-five or thirty years by Taunton.

In all the perambulations of the lines between the two towns the land of Robinson has been included within the limits of Raynham, where it has always been taxed ; and his descendants residing thereon have always been considered as inhabitants of that town.

The Williams land was always included by these perambulations within the limits of Raynham ; and the father of the plaintiff signed the report of the perambulation of 1810, as one of the selectmen of Taunton. The map of Taunton executed under the resolve of the legislature passed in 1830 included the same land within the limits of Raynham.

Williams
*v.*
Raynham.

If the Court of Common Pleas should be of opinion, that the plaintiff was rightfully taxed for his real and personal estate, and for his poll, in Raynham, then he was to become nonsuit; but if he was not liable to be taxed in that town for either, then judgment was to be rendered in his favor, each party reserving the right to file exceptions.

The Court of Common Pleas having ordered judgment to be entered for the plaintiff, the defendants excepted.

The case was argued in writing.

*Mann* and *S. Williams*, for the defendants. The provision in the act of incorporation respecting the land of Nathaniel Williams, was a personal privilege only and ceased to operate at his death. The tax upon land is in the nature of a specific tax upon the estate, whoever may be the owner. *Preston* v *Boston*, 12 Pick. 13. In the present case, the act expressly provides, that Leonard and Williams should be taxed in Taunton and Raynham respectively, but does not charge any one else owning their estates; and by omitting so to do, indicates clearly that the land, when owned by others, was to be taxed elsewhere.

If this was not a personal privilege conferred on Leonard and Williams, and if the land of Leonard was for ever to be in Raynham, and the land of Williams to be for ever in Taunton, there was no necessity for providing, that such lands should be taxed in those towns respectively. *Colburn* v. *Ellis*, 7 Mass. R. 91; *Kingsbery* v. *Slack*, 8 Mass. R. 154; *Dillingham* v. *Burgis*, 16 Mass. R. 58; *Attleborough* v. *Harwich*, 17 Mass. R. 398.

The cases decided furnish two tests for determining whether lands are permanently or temporarily set off from one town to another. One test is, whether the lands are set off *by bounds*, or are *particularly described*. The other is, whether *words of perpetuity* are or are not used. *Colburn* v. *Ellis*, 7 Mass. R. 91; *Kingsbury* v. *Slack*, 8 Mass. R. 154; *Cumberland* v. *Prince*, 6 Greenl. 408. In the present case, there are neither words of *perpetuity* nor of *boundary*.

*Colby*, for the plaintiff, to the point that the act incorporating Raynham did not contemplate a personal privilege to Nathaniel Williams, but a permanent exclusion of his land from that town, cited *Cumberland* v. *Prince*, 6 Greenl. 408 ,

Williams
v.
Raynham.

*Bosworth* v. *Ripley et al.*, decided at Plymouth in 1825 ; * *Capen* v. *Glover*, 4 Mass. R. 306 ; to the point, that the defendants were barred by lapse of time from exercising jurisdiction over or taxing the Williams land, *Capen* v. *Glover*, 4 Mass. R. 306 ; *Cobb* v. *Kingman*, 15 Mass. R. 197 ; Grotius, *lib*. 2, *c*. 4, *p*. 86 ; and to the point, that the act of incorporation had received an early practical construction inconsistent with the claims now set up by the defendants, and which must prevail over the more technical import of the words, *Rogers* v. *Goodwin*, 2 Mass. R. 475 ; *Packard* v. *Richard- son*, 17 Mass. R. 144.

*Oct. 21st.*

SHAW C. J. delivered the opinion of the Court. The first question presenting itself in this case is, what is the true construction of the statute, independently of all acts of the parties, which may be relied on, upon either side, as aiding that construction. It seems to us very clear, that the straight line mentioned in the statute, was adopted with an exception of the lands of Leonard on the one side and of Williams on the other. If so, the exception was as permanent and lasting as the dividing line itself ; it was a part of it.

---

* THE case referred to was an action of trespass against the assessors of Plympton, who had distrained property of Bosworth, the plaintiff, to enforce the payment of his tax; and the question was, whether the plaintiff and his farm belonged to Plympton or to Halifax. By the act of July 4, 1734, incorporating Halifax, a pretty direct line was drawn across the northerly part of Plympton, which would include in Halifax the lands and tenements of the plaintiff; but the act contains this clause : " only it is to be understood, that the land of Doctor Polycarpus Loring, adjoining to his dwellinghouse, and the lands lying on the southeasterly side of the line, &c belonging to Zechariah Soule (and others named) and their families, dwelling within the bounds of the said township, shall still be and remain to the aforesaid town of Plympton." The lands and tenements of the plaintiff were the farm of Zechariah Soule. Zechariah Soule died in 1751, and his estate descended to his son Ephraim, who was born in 1729 and died in 1817. Ephraim owned and occupied the farm from the death of his father until his own death, except during the latter part of his life, when he lived with one Rider, who purchased the estate. On Ephraim's death the plaintiff purchased the estate of Rider, and owned and occupied the farm until the time of bringing the action. All the persons who had lived on this farm had uniformly been taxed to Plympton and had paid their taxes. Ephraim Soule was several times chosen surveyor of highways in Plympton. While Rider owned the farm a high way was laid out through it and constructed at the expense of Plympton Since the plaintiff bought the farm he had several times been chosen a sur

Williams<br>v.<br>Raynham.

It seems quite manifest, in comparing the description with the premises, that when the line departs from the river, which was a natural boundary, if it had run straight, it would have passed through Williams's land, and Leonard's land, and divided them. But there is a convenience in such cases in having the whole of a single estate, occupied together, in one and the same town. To yield to this consideration of convenience, the two exceptions were made. But beyond this consideration of convenience, it was desirable to have a straight line, from one natural boundary to another, that is, from the river to the hill. The most simple mode of accomplishing these objects was to describe or fix the straight line between these *termini*, excepting out of it, by a description easily understood and applied, that part of Williams's land, (the bulk of which probably was on the Taunton side of the straight line,) which fell on the Raynham side of the line, so as to include the whole in Taunton, and make a like exception of that portion of Leonard's land, which lay on the Taunton side and include it in Raynham. The words used are strictly local

---

veyor of highways and once a tythingman by Plympton, and had served in those offices. Halifax first taxed the plaintiff in 1821, and there was no evidence that it had previously taxed any of the persons who had owned or occupied this estate. The maps of Plympton and Halifax, made by the agents of the two towns respectively, about the year 1794, made the plaintiff's land fall within Plympton.

*W. Baylies,* for the plaintiff, argued that the statute conferred a personal privilege, which ceased upon the death of Zechariah Soule, or at most, on the death of Ephraim; *Dillingham* v. *Burgis,* 16 Mass. R. 58; *Kingsbery* v. *Slack,* 8 Mass. R. 154; and that the evidence of usage was inadmissible to control the legal construction of the statute.

*Wood* and *Eddy,* for the defendants, contended that by the words of the statute, by contemporaneous exposition, and even by prescription, the plaintiff's land was in Plympton. *The King* v. *Chester,* 1 Maule & Selw. 103; *Rogers* v. *Goodwin,* 2 Mass. R. 475; *Blankley* v. *Winstanley,* 3 T. R. 279; *Jackson* v. *Schoonmaker,* 7 Johns. R. 12; Peake's Evid. 13, cites *Rex* v. *Hammersmith; Rust* v. *Low,* 6 Mass. R. 90; *Cooke* v. *Booth,* Cowp. 822; *Withnell* v. *Gartham,* 1 Esp. Rep. 322

The *Court* said, that probably by the true construction of the statute the plaintiff's land was excepted out of the territory set off to the town of Halifax; that if this were considered doubtful, the continued usage for nearly a century, would settle the construction; and that it would be mischievous to set up a new line merely for the sake of straightening the boundary between the two towns.

*Plaintiff nonsuit*

*Nov. 18th.*

*Nov 19th*

and descriptive, *including* in said new township all the *lands*, &c. and *excluding*, that is, excluding from the new township, and leaving in the old town, *all the land* of Williams. Nothing looks like a temporary arrangement or a personal privilege. The names of Leonard and Williams are apparently used only as the means of describing the estates which they respectively owned or held.

It has been argued for the defendants against this construction, that the legislature must have had a different view, because it would have been unnecessary to declare that Williams should pay all his taxes in Taunton, if he was in all respects an inhabitant of that town. But this argument has very little weight ; it is one of those pleonastic modes of expression, so common in all acts of legislation, and also in other legal instruments, where after the principal provision the act goes on to declare a particular legal consequence, where the consequence would have as effectually followed, without the declaration.

Nor is this construction controlled by the act of the joint locating committee of the two towns. The bounds were finally fixed by the act itself, and the act made no provision for any locating committee. The committee therefore had no power to establish or alter bounds ; their only power and all they professed to do, was, to set up monuments and mark upon the ground the bounds fixed by the act, in order that they might be known. There is no distinction in the act itself, between the exception of Robinson's land, lying south of the river, and Williams's land, lying east of the straight line. In both cases, the general line is first described, and then a special exception out of it is made. The committees made a distinction in the two cases, because they run round Robinson's land and set up monuments, and they did not do this in regard to Williams's. There might be good reasons for this. Robinson's might be more extensive, or the bounds less known and familiar. Williams's was a smaller exception, and his farm may have been well known, and the lines definite. But I do not understand that they placed any monument, upon the straight line, on any part where it crossed Williams's or Leonard's land. When therefore they say they have marked

this line, having had a due regard to the inclusions and exclusions expressed in the act, respecting the land of Zephaniah Leonard and the land of Nathaniel Williams, they mean to say, that they have run the straight line there with the same exceptions which were made in the act, and which were sufficiently definite without any act or declaration of theirs. They make no such allusion to the excepted line of Robinson's land, because their report itself shows that they have had due regard to it, and run the line conformably to it, by placing and describing the monuments, by which it was bounded.

In considering the argument arising from the perambulations, I am apprehensive that the facts are not stated with sufficient accuracy. If the perambulating committees, by their reports, had agreed in terms, that the straight line was the true line, and that since the first Williams's death, all who have lived on the excepted territory were domiciled in Raynham, it would have been a very strong fact, upon which to found the argument of contemporaneous construction ; though it would have been directly repugnant to the other act of the two towns, by which Williams was taxed for his poll and personal estate in Taunton, by which both towns agreed that he was there domiciled. But I understand, from the facts, that these perambulations have merely followed the old description of the locating committees, describing the general line, but taking no notice of the exceptions. Supposing this to be so, and that no monuments have been erected on the straight line, within the limits of the Williams or Leonard lands, then the same remarks, made in reference to the report of the first locating committees, applies to the reports of the perambulating committees. They describe the general line, without noticing the exceptions, the great object being to keep up and maintain the established monuments. If such be the case, then they do not amount to an admission, that the territory in question was within the boundaries of Raynham.

Then the fact of the uniform taxation of the Williamses, after the death of the first Nathaniel Williams, in the town of Taunton, for poll and personal tax, which is a declaration of domicil, and the forbearance to tax them in Raynham, which is a corresponding admission on their part, is strong evidence of

contemporaneous construction, that is, ⌐ construction com-
mencing when the period first arrived at which a question
could be made, and acquiesced in by both parties for eighty
or a hundred years.

Without adverting to several other considerations suggested
by the argument, the opinion of the Court is, that the plaintiff
is an inhabitant of Taunton, that he was not liable to be taxed
for his poll and personal estate in Raynham ; and according to
the agreement of the parties, the plaintiff is entitled to judgment.